UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:24-cr-129-RBD-DCI

GIOVANY JOEL CRESPO HERNANDEZ

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS**

The United States of America opposes the defendant's motion to suppress all evidence collected from the house at 1440 Guinevere Drive as fruit of the poisonous tree. Doc. 60. The motion is due to be denied because there was probable cause to search for evidence of possession of marijuana once detectives conducting a neighborhood canvas related to an active carjacking and murder investigation smelled the strong odor of marijuana emanating from the house. Further, the facts set forth in the search warrant affidavit reasonably established that the odor was not attributable to medical marijuana. As such, the warrant was supported by an affidavit setting forth probable cause for the search. Even assuming a lack of probable cause, law enforcement relied on the authorized warrant in good faith, and thus the evidence should not be suppressed. Accordingly, this Court should deny the defendant's motion to suppress.

**FACTUAL BACKGROUND**

Seminole County Sheriff's Office (SCSO) Detective Robbin Lilly, a law-enforcement officer since January of 1999 who has taken hundreds of hours of law-

1

enforcement training and has made hundreds of drug arrests, authored a Florida State Search Warrant affidavit that sought authority to search a residence for evidence of possession of marijuana in violation of Chapter 893 of the Florida Statutes. *Exhibit A*. The affidavit lays out the following facts:

At approximately 10:35 am on April 17, 2024, Seminole County Sheriff's Office (SCSO) detectives Robbin Lilly and Daniel Anderson were canvassing Guinevere Drive in Casselberry, Florida, attempting to speak to residents in the area. When detectives knocked on 1440 Guinevere Drive, Giovany Joel Crespo Hernandez (Crespo) opened the front door. When Crespo opened the front door, both detectives smelled the odor of burnt cannabis emanating from the home. (Both detectives were very familiar with the odor of cannabis from many prior criminal investigations.) Crespo was not actively smoking anything, nor was he holding a smoking device during this encounter.

The detectives asked Crespo if he would step outside to speak with them. Crespo responded in broken English and Spanish and referred to a dog before shutting the door while remaining inside the home. Detectives noticed Crespo seemed nervous during this short exchange.

Shortly thereafter, Monicsabel Romero Soto (Romero) opened the door, said "one second" and then shut the door. Both detectives again noticed the strong odor of burnt cannabis emanating from inside the home when Romero opened the door. Approximately 30 seconds later, Romero opened the door again, exited the home, and spoke briefly with detectives. Both detectives again noticed the strong odor of

burnt cannabis coming from the home when Romero opened the door. Romero indicated that she did not speak English and agreed that the detectives could come back later to speak to her and Crespo. When Detective Lilly walked away from the front door of 1440 Guinevere Drive, the smell of burnt marijuana dissipated.

Law enforcement continued their canvass, speaking to another resident who lived on the street. While doing so, Detective Lilly noticed Crespo poking his head around the corner of his attached garage, looking towards the officers. When Detective Lilly made eye contact with Crespo, Crespo disappeared behind the corner.

The detectives began watching Crespo and Romero's house, and, at approximately 11:05 am, they observed Crespo and Romero exit the house and get in a car parked in front of the house. Neither was carrying any bags or items that appeared as if they could be used to remove contraband from the residence. The detectives approached Crespo and Romero near the vehicle and attempted conversation using Google Translate. Shortly thereafter, Crespo and Romero left the area in the car.

Neither detective smelled burnt marijuana emanating from the car or from Crespo or Romero's persons when speaking to them while they were in the car. Detective Lilly concluded that it was logical to believe that neither Crespo nor Romero were smoking the marijuana that he and Detective Anderson had smelled earlier.

SCSO detectives conducted a search of the Florida Medical Marijuana Use Registry. Crespo had a valid medical marijuana prescription that would allow him to use 2.5 ounces (70 grams) of marijuana over the course of 35 days; had he picked up the entire amount, Crespo could have used about 2 grams of marijuana per day under his prescription. The detectives learned that Crespo had legally obtained about 3.5 grams of marijuana on April 1, that is, 16 days before the date on which they smelled the burned marijuana in Crespo's home. As a result of the small quantity of marijuana Crespo had legally obtained and the fact that 16 days had elapsed since he had legally obtained it, Detective Lilly found it unreasonable to believe that Crespo still had any marijuana that he possessed from his prescription; instead, he believed based on these facts that it was probable that the marijuana causing the odor from the residence was not legally possessed. Romero did not have a valid medical marijuana prescription.

Detectives also discovered that Crespo had two arrests from 2019 for selling cocaine and/or heroin.

Based on the above information, Detective Lilly applied for a warrant to search the residence for evidence of marijuana possession; a state Judge approved the warrant. At the time of the execution, the residence was unoccupied. During the resultant search, SCSO deputies located two firearms, various calibers of ammunition, approximately 200.8 grams of marijuana, approximately 17 grams of

cocaine,[1] $13,701.00 in United States currency, and drug paraphernalia including a money counter, drug ledgers, baggies, cellophane wrap, and marijuana grinders. (After the search commenced, Detective Lilly obtained a second warrant authorizing the search for evidence of the state offenses of fentanyl and cocaine possession and for possession of a firearm during the commission of a felony. *Exhibit B*.) Inside a vehicle in the driveway, SCSO deputies also located a hidden compartment typically used by drug traffickers to hide narcotics.

## MEMORANDUM OF LAW AND ARGUMENT

**A.    The issuance of the warrant was supported by probable cause that evidence of illegal marijuana possession would be found in the residence.**

"The bulwark of Fourth Amendment protection … is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). "To establish a finding of probable cause, a search-warrant affidavit need only contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." *United States v. Shabazz*, 887 F.3d 1204, 1214 (11th Cir. 2018) (internal quotation marks and citation omitted). The task of a judge reviewing a warrant application is to "make a practical, common-sense decision" whether probable cause exists based on

---

[1] The indictment alleges that the defendants possessed fentanyl. The United States recently received lab results, though, that indicated that this substance is actually cocaine. The United States intends to seek a superseding indictment shortly.

the information in the affidavit supporting the application. *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citation omitted). Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id.* (citations omitted).

Here, multiple factors indicated that there was a fair probability that evidence of illegal marijuana possession would be found in the residence at 1440 Guinevere Drive. First, both detectives noticed the distinct odor of burnt marijuana wafting from within the residence each of the three times on April 17 that the door to the residence was opened. The odor dissipated when the detectives walked away from the door to the residence, and they did not smell the odor when they stood near a car in which Crespo and Romero were sitting.

These facts support the "practical, common-sense" conclusion that there was a fair probability that evidence of the illegal possession of marijuana was located in the residence. As the Eleventh Circuit has held multiple times, the odor of marijuana is a powerful indicator of probable cause that evidence of drug possession will be found in a location. *See, e.g., United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law

enforcement experience to be the odor of marijuana."); *United States v. Reed*, 2019 WL 2710088, at *6 & n.5 (N.D. Ala. 2019) (collecting numerous cases); *see also Kentucky v. King*, 563 U.S. 452, 455–56 (2011) (upholding a warrantless exigent search where officers detected the "very strong odor of burnt marijuana" in an apartment complex breezeway and emanating from an apartment door).

Further, based on the facts here, Crespo's medical marijuana prescription, which arguably could make his possession of prescribed marijuana legal under state law,[2] does not undermine the probable cause otherwise set forth in the affidavit. As explained in the search warrant affidavit, Crespo was prescribed up to 2 grams of medical marijuana per day, and he had obtained less than two days' worth—3.5 grams—pursuant to that prescription more than two weeks before the date on which law-enforcement officers sought the search warrant. And Romero was in the house, too, and any possession by her would have been illegal regardless of Crespo's prescription. Further, Crespo was nervous when he spoke to the detectives by his door, providing a further indication that the marijuana in the house was illegally possessed. *See United States v. $121,100 in U.S. Currency*, 999 F.2d 1503 (11th Cir. 1993) (holding that nervousness tends to suggest "some illegal activity"). So, even if Crespo's medical-marijuana card theoretically increased the possibility that the marijuana the officers smelled was not illegally possessed, there still was at least a

---

[2] Possession of some amounts of marijuana with a valid prescription is not illegal under state law. Fla. Stat. § 381.986. Possession of any amount of marijuana remains illegal under federal law. 21 U.S.C. § 844.

7

fair probability that the marijuana the detectives smelled had not been legally obtained. The test is fair probability, not certainty.

Crespo argues that the search warrant affidavit's conclusion that another person was likely in the residence was not reasonable. *See* Doc. 60 at 3; *see also* Ex. A at 5 ("Since your affiant could not smell the odor of cannabis on Hernandez [Crespo] or Soto's [Romero's] persons it is logical to believe that neither of them were the ones who were smoking the cannabis which was smelled at the front door."). As an initial matter, it was not necessary to probable cause that another person be present in the residence. A search of a location is permitted under the Fourth Amendment when there is probable cause that evidence will be found there. *Shabazz*, 887 F.3d at 1214. That requirement was met here for the reasons explained above, so whether there was probable cause presented in the affidavit that another person was present in the residence is immaterial to the sufficiency of the warrant. Regardless, though, the affidavit did explain the basis for the fair-probability conclusion that another person was smoking marijuana in the residence: neither Crespo nor Romero were observed to be smoking, and neither smelled like burnt marijuana when they left the residence about 30 minutes later, nor were they carrying any bags from the residence that would be consistent with the removal of contraband. These facts are sufficient to support the conclusion that it was probable that another person was in the residence.

In addition to the smell of burnt marijuana, the affidavit also set forth that Crespo was nervous when interacting with the detectives and attempted to surreptitiously observe their further investigation after they left his house. These

indicators of consciousness of guilt further demonstrate a fair probability that evidence of a crime would be found in the residence. *United States v. Gonzalez*, 969 F.2d 999, 1005 (11th Cir. 1992) (citing with approval *United States v. DeLeon*, 561 F.2d 421, 423 (2d Cir. 1977), and its consideration of facts evincing "consciousness of guilt" in determining whether probable cause existed for an arrest). Altogether, the facts presented in the search warrant affidavit amply support the common-sense conclusion that there was a fair probability that evidence of illegal marijuana possession would be found in the residence. Therefore, the defendant's motion to suppress should be denied.

B.  **Law-enforcement officers relied on the warrant in good faith.**

Even assuming that the affidavit was lacking probable cause, the fruits of the search should not be suppressed because the law-enforcement officers relied on the warrant in good faith pursuant to *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that the exclusionary rule barring the use of illegally obtained evidence does not apply to evidence seized in good faith reliance on a warrant issued by a detached and neutral magistrate judge, even where the warrant is subsequently deemed invalid. *Id.* at 922. "In the ordinary case, an officer cannot be expected to question a judge's decision that the requirements for a warrant have been satisfied or that the form of the warrant is sufficient." *United States v. McCall*, 84 F.4th 1317, 1323 (11th Cir. 2023). This exception applies in many situations, including when "officers reasonably relied on a warrant that was later deemed invalid for lack of probable cause." *United States v. Taylor*, 935 F.3d 1279, 1289 (11th Cir. 2019).

Evidence should be suppressed "only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918.

"The good faith exception 'applies in all but four limited sets of circumstances.'" *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021). Those are where: (1) the magistrate judge "issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) the issuing magistrate judge "wholly abandoned his judicial role;" (3) the supporting affidavit "is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) based on the facts of the particular case, "a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid." *Id.*

In relying on the search warrant issued by the state judge, the law-enforcement officers acted in good faith. None of the circumstances that would eliminate the officers' good faith reliance are present here, either. First, there is no false information in the affidavit, nor does Crespo identify any. (Indeed, the officers included Crespo's medical-marijuana information, which enabled the judge to factor that information into her probable-cause determination.) Second, there is no allegation or evidence that the judge abandoned his judicial role. Nor is the warrant so clearly facially deficient that the officers were not entitled to rely on it.

Crespo argues, though, that probable cause is so lacking as to render the officers' belief that probable cause existed entirely unreasonable. Doc. 60 at 3. "[T]he

threshold for establishing this exception is a high one, and it should be." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). As the Supreme Court explained in *Leon*, "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Leon*, 468 U.S. at 921. Therefore, "to exclude evidence on this ground, the affidavit must be so clearly insufficient that it provided no hint as to why police believed they would find incriminating evidence." *United States v. McCall*, 84 F.4th 1317, 1325 (11th Cir. 2023) (internal quotation marks omitted), *cert. denied*, 144 S. Ct. 1042 (2024).

As discussed above, though, the facts set forth in the affidavit were compelling; even if this Court were to find that probable cause were lacking, it would not be wholly so. *See id.* (even if warrant was not supported by probable cause, "the good faith exception applies to close calls and threshold cases"). This is especially true in light of the strong inference of criminality that has regularly been found to exist from the odor of marijuana and the investigation by the detectives that showed the immateriality of Crespo's medical marijuana prescription. As described above, these facts combined to make it at the very least plausible that probable cause existed, even if this Court determines that the actual standard of probable cause was not met.

Simply put, this is not one of the "unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. The law-enforcement officers acted in good faith in relying on the duly reviewed and approved search warrant, and suppression is not an appropriate remedy in this case. *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).[3]

**CONCLUSION**

The defendant's motion to suppress should be denied because the search warrant was supported by an affidavit setting forth clear probable cause. Even if the Court finds the search was not supported by probable cause, the defendant's motion to suppress should still be denied because law-enforcement officers relied on the judicially authorized warrant in good faith.

    Respectfully submitted,

    ROGER B. HANDBERG
    United States Attorney

By:   */s/ Stephanie A. McNeff*
      STEPHANIE A. MCNEFF
      Assistant United States Attorney
      Florida Bar No. 1003060
      400 W. Washington Street, Suite 3100
      Orlando, Florida 32801
      Telephone:   (407) 648-7500
      Facsimile:    (407) 648-7643
      E-mail: Stephanie.mcNeff@usdoj.gov

---

[3] No evidentiary hearing is necessary on this issue because extrinsic evidence is not necessary to support a finding of good faith. *See United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

**U.S. v. GIOVANY J. CRESPO HERNANDEZ   Case No. 6:24-cr-129-RBD-DCI**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Charles Taylor, Esq.

<pre>                                        /s/ Stephanie A. McNeff
                                        STEPHANIE A. MCNEFF
                                        Assistant United States Attorney
                                        Florida Bar No. 1003060
                                        400 W. Washington Street, Suite 3100
                                        Orlando, Florida 32801
                                        Telephone:   (407) 648-7500
                                        Facsimile:   (407) 648-7643
                                        E-mail: Stephanie.mcNeff@usdoj.gov</pre>